### JACOB CHACE v. WILLIAM B. GREGG ET AL.

#### No. 322.

**1. Will—Community Property—Election.**

In a will, after specific bequests to the widow and son of the testator, was the item: "I desire the remainder of my property of every description, real, personal, or mixed, to be equally divided between my son William Bowen Gregg and my wife Mary A. Gregg, with the expressed understanding and condition annexed, that if my wife Mary A. Gregg should die without issue from her body, that is to say, without leaving a child or children born unto her, and shall at the time of her death be in possession of property of any description that she may have received from me by virtue of this my

last will, then and in that event I desire the said property to go to my son William Bowen Gregg, if then living; and if dead, to his nearest heirs." The testator owned separate and community property. *Held:*

1. That the will disposed of the property mentioned therein as an entirety, without distinction between separate and community property.

2. The widow, by the terms of the will, was put to her election as to whether she would accept under its terms.

3. The widow having assented to the will, and having sold a part of her share in the separate property given her by the will, and receiving payment therefor, is considered as having elected to take under the will.

4. The conditions expressed attached to all property received under the
will by the widow.. ............................................... 557

**2. Partition Deeds.**

Deeds interchanged between two devisees taking equally under a will, giving to each his share, is a partition. Such deeds do not confer title, but only
dissolve the tenancy in common, leaving the title as it was before....... 558

**3. Condition and Devise.**

Under the will the widow took an estate in fee, determinable on the condition expressed, in one-half of all the property in controversy, except that given
the son specifically ............................................... 558

**4. Contingent Remainder—Nearest Heirs.**

The son under the will, in addition to his own half, took a contingent remainder in that devised to the widow. The words *"nearest heirs"* designated the class of persons to whom the will gave in all the property devised
to the widow that should be undisposed of at her death................ 558

**5. Remainder.**

The children of William Bowen Gregg, upon the happening of the contingencies upon which their estate depended, took it under the will, and not as heirs of their father. He had no power to convey their estate, and his
deed did not estop them to assert their ownership therein................ 559

**6. Covenant of Warranty.**

A covenant of warranty in a deed can not operate by estoppel to confer upon the grantee greater title than the deed itself would have conferred, if
effective. See example ............................................ 559

ERROR to Court of Civil Appeals for First District, in an appeal from Harris County.

*Ira P. Jones* and *E. P. Hamblen,* for plaintiff in error.—1. The will of Darius Gregg does not by clear and explicit language evidence the intent on his part to dispose of the wife's community interest, and therefore the court will restrict and construe the will as devising only the property of Darius Gregg. Parker v. Parker, 10 Texas, 83; Philleo v. Holliday, 24 Texas, 45; Haley v. Gatewood, 74 Texas, 285; Carroll v. Carroll, 20 Texas, 743; Moss v. Helsly, 60 Texas, 435; Smith v. Butler, 85 Texas, 130; 2 Redf. on Wills, p. 360, sec. 16; Beach on Wills, sec. 156; 1 Pom. Eq., secs. 473, 474; Adsit v. Adsit, 2 Johns. Ch., 448; Condon v. Stephens, 2 Hill Ch., 46.

2. Had Darius Gregg intended by the fifth item of his will, wherein he devised to his widow "all that portion of land I own that lies between the Liberty road and the New Orleans Railroad," to dispose of

the entire land absolutely, including her community interest, and had such intention been manifest in his devise to his son of that portion lying between the Liberty road and the bayou, such devise to his wife would not have been limited by the sixth item of his will. It gave an unqualified fee simple title, and the sixth section of the will, providing, that "after the payment of the above special bequests" he devised the remainder subject to the limitation, does not clearly indicate that his intention was to limit the special bequest by the conditions annexed in the sixth item; and therefore "the fee simple title devised to Mrs. Gregg in the fifth item of the will should not be cut down to a less estate by the general expression in the sixth item." 1 Redf. on Wills, p. 446, sec. 6; Jarm. on Wills, marg. pp. 444, 831, 854; Jones v. Bacon, 68 Me., 34; Ramsdell v. Ramsdell, 21 Me., 293; Parks v. Kimes, 100 Ind., 148; Tiers v. Tiers, 98 N. Y., 568; Freeman v. Coit, 96 N. Y., 63.

3. Had the will of Darius Gregg been so drawn as to devise to Mrs. Gregg a conditional fee, as contended for in this case, then the partition made between his widow and son, his only heirs and devisees, would have been binding, and would have cut off any rights that appellees or defendants in error had in said land. 1 Washb. on Real Prop., marg. p. 432; James v. Adams, 64 Texas, 193; Stark v. Carroll, 66 Texas, 399; Word v. Drouthett, 44 Texas, 368.

*S. Taliaferro*, guardian ad litem and attorney for defendants in error.—1. It is evident from the reading of the will of Darius Gregg, taken as a whole, that he regarded and treated the community estate of himself and wife as his separate property, and he divided and devised the same as though it were all its separate property. Rogers v. Trevathan, 67 Texas, 406; Morrison v. Bowman, 29 Cal., 347; In re Stewart, 74 Cal., 98.

2. Under the terms of the will, it devolved upon the widow to elect whether she would take under or against it. 1 Jarm. on Wills, 2 ed., 449; 3 Pom. Eq. Jur., secs. 461, 472, 474, 475, 489, 491, 493, 512, 513, 676; 1 Greenl. on Ev., 249.

3. Sale as evidence of election: Bradford v. Kent, 43 Pa. St., 485; Thompson v. Hoop, 6 Ohio St., 480.

4. The devise to Mary A. Gregg by Darius Gregg was a conditional devise, so far as any of the property which Mary A. Gregg might fail to dispose of during her life-time is concerned. In the event she died leaving a child or children, the title became absolute in her; she dying childless, the title to such property as she had in her possession which she received under Darius Gregg's will, and which she had failed to dispose of during her life-time, became absolutely vested in W. B. Gregg; or he being dead, in his nearest heirs. It was intended by the will of Darius Gregg, that the land which he had failed to partition between his son W. B. Gregg and his wife Mary A. Gregg should be

partitioned between them, and each receive their respective allotments.

BROWN, ASSOCIATE JUSTICE.—Darius Gregg and Mary A. Gregg were husband and wife. William B. Gregg was the son of Darius Gregg by a former wife. Darius Gregg was possessed of real estate, his separate property, and of real estate and personal property, the community property of himself and his wife, Mary A. Gregg. Darius Gregg made a will, which, after his death, was probated. By his will Darius Gregg made certain specific devises of real estate to some nephews, not necessary to mention, and in the will were the following provisions affecting the matters in litigation:

"Item 2. I give and bequeath to my son, William Bowen Gregg, eleven lots, in block 13, in the town of Waco, McLennan County, Texas; also, fifteen acres of land owned by me adjoining said town of Waco; also, all that portion of ground owned by me that lies between the Liberty road, in Houston, Texas, and Buffalo Bayou, together with the improvements thereon that may remain unsold at my death; also, the donation of land given me by the Republic of Texas, and located on Menard's Creek, in Polk County, Texas; and after my debts are paid, I give unto my said son two-thirds of all the money I may die possessed of."

"Item 5. To my wife, Mary A. Gregg, I give all that portion of land I own that lies between the Liberty road and the New Orleans Railroad, situated in Houston, Harris County, Texas, including my homestead; also, my horse and buggy, and one-third of the money I may die possessed of, after payment of my just debts."

"Item 6. After the payment of the above special bequests, I desire the remainder of my property of every description, both real, personal, and mixed, to be equally divided between my son, William Bowen Gregg, and my wife, Mary A. Gregg, with the expressed understanding and condition annexed, that if my wife, Mary A. Gregg, should die without issue from her body, that is to say, without leaving a child or children born unto her, and shall at the time of her death be in possession of property of any description that she may have received from me by virtue of this my last will and testament, then and in that event I desire the said property to go to my son, William Bowen Gregg, if then living; and if dead, to his nearest heirs."

All of the property devised specifically to William Bowen Gregg and Mary A. Gregg was the community property of Darius and Mary A. Gregg, except the land in Polk County.

There were several tracts of land in Denton County, some of which was community property, and some the separate property of Darius Gregg. Of the separate property, the land in Denton County, Mary A. Gregg sold an undivided half-interest to William B. Gregg, receiving $5000 in payment therefor.

The property in controversy was the community property of Darius Gregg and his wife, and embraced in the sixth item, excepting the homestead, that is, the tract of land in the city of Houston, lying between the Liberty road and the New Orleans Railroad, and that tract devised to William B. Gregg, described as lying between the Liberty road, in Houston, and Buffalo Bayou. Darius Gregg died in 1870, and his wife, Mary, married the plaintiff in error in 1882. She afterwards died, leaving a will, whereby she devised and bequeathed all of her estate to her husband, plaintiff in error.

William B. Gregg died before the death of his stepmother, Mary A. Chace, leaving a widow and children, to wit, Susan S., Carrie May, and W. B. Gregg, Jr., all minors. The widow of W. B. Gregg married C. Lipscomb.

Before his death W. B. Gregg made a will, appointing C. Lipscomb executor of his estate, which was duly probated.

Before the marriage of Mrs. Mary A. Gregg to the plaintiff in error, she and William B. Gregg, Sr., made a parol partition of the property described as lying between the Liberty road, in Houston, and Buffalo Bayou, and that other portion, described in the fifth item as lying between the Liberty road and the New Orleans Railroad, situated in Houston. By this parol partition, each was to have the portion devised to him or her in the second and fifth items.

After the marriage of Mary A. Gregg and Jacob Chace, partition was made by warranty deeds from each to the other between Mary A. Chace, formerly Gregg, and William B. Gregg, Sr., of certain property described in the deeds, and situated in the city of Houston, as well as some other property.

After the death of Mary A. Chace and William B. Gregg, Jacob Chace instituted suit in the District Court of Harris County against C. Lipscomb, executor of W. B. Gregg, Emma Lipscomb, his widow, and his minor children, named above, to quiet the title to a portion of the property in controversy. Lipscomb and his wife answered, admitting the justice of the plaintiff's claim. S. Taliaferro was appointed by the court guardian ad litem for the minors, and filed an answer denying the plaintiff's right to recover, and pleaded in reconvention for removal of cloud in their favor upon the title to other lands claimed by the plaintiff, Chace, in the same right. There was a trial before the court, in which judgment was rendered for the defendants. From this judgment Chace appealed to the Court of Civil Appeals of the First Supreme Judicial District, which affirmed the judgment of the District Court.

Jacob Chace sued out this writ of error upon the following grounds, assigned as error in the judgment of the Court of Civil Appeals:

1. The court erred in its conclusion of fact, wherein it held that Mary A. Gregg often spoke of the property devised to her as belonging to W. B. Gregg after her death, and in the construction that the court placed thereon.

2.  In the conclusion of the court that there is nothing in the will making any distinction between community and separate property, but on the contrary, it is all disposed of alike as the property of the testator.

3.  In the conclusion of fact, that Mrs. Gregg dealt with the property as devised by the will.  Every act done by her and W. B. Gregg with reference thereto was in conformity with the provisions of the will.

4.  The court erred in its conclusion of law that Darius Gregg by his will undertook to dispose of the land as an entirety, and not merely of a community interest therein.  That the will disposes of the entire estate; that Mrs. Gregg elected to take in accordance with its terms.

5.  The court erred in holding that the devises to Mary Gregg, both as to the special bequest and the residuary clause, vested in her a conditional estate in fee only.

6.  The court erred in its conclusion of law, that the limitation in the sixth item of the will applied to the community property in Gregg's second addition to the city of Houston.

7.  The court erred in its conclusion of law, that the partition between W. B. Gregg and his mother, made by parol, as well as that made by warranty deeds from one to the other, did not bind W. B. Gregg or his heirs.

The Court of Civil Appeals correctly held, that Darius Gregg by his will disposed of the property mentioned therein, as an entirety, without distinction between separate and community property; and that Mary A. Gregg was, by the terms of said will, put to her election as to whether she would accept under its provisions, or repudiate it and claim her community rights.

The evidence is sufficient to sustain the conclusion of the Court of Civil Appeals, that Mary A. Gregg elected to accept under the will of Darius Gregg.

The condition expressed in the sixth item of the will, as follows, "With the expressed understanding and condition annexed, that if my wife, Mary A. Gregg, should die without issue from her body, that is to say, without leaving a child or children born unto her, and she at the time of her death be in possession of property of any description that she may have received from me by virtue of this my last will and testament, then and in that event, I desire the said property to go to my son, William Bowen Gregg, if then living, and if dead, to his nearest heirs," attached to all property received by Mary A. Gregg under that will.

The deeds which were made by Mary A. Chace, formerly Gregg, and William B. Gregg, each to the other, expressed a consideration of $5, the property mentioned in each being that which the two jointly held under the will of Darius Gregg; and Jacob Chace testified, that the deeds were made in order to divide the property equally between

Mary A. Chace and William Bowen Gregg. This was unquestionably a partition voluntarily made by the parties.

A partition between joint owners does not confer title upon either, but has the effect only to dissolve the tenancy in common and leave the title as it was before, except to locate such rights as the parties may have respectively in the distinct parts of the premises, and to extinguish such rights in all other portions of that property. Tabler v. Wiseman, 12 Ohio St., 211; Yancey v. Radford, 86 Va., 642; Carpenter v. Schermerhorn, 2 Barb. Ch. (N. Y.), 322; Goundie v. Water Co., 7 Pa. St., 238; Arnold v. Cauble, 49 Texas, 530; Davis v. Agnew, 67 Texas, 213.

Under the will of Darius Gregg, Mrs. Gregg took an estate in fee, determinable upon the condition expressed, in one-half of all the property in controversy, except that given to William Bowen Gregg specifically; that is, that which was described as lying between the Liberty road, in Houston, Texas, and Buffalo Bayou; and W. B. Gregg took an undivided half of all other property in suit in fee, and in addition thereto he took a contingent remainder in fee in the homestead, described as lying between the Liberty road and the New Orleans Railroad; also, a like estate in the undivided half of all other property given to Mrs. Gregg by the will.

The words, "his nearest heirs," as used in the sixth item of the will, designated a class of persons to whom the will gave a contingent remainder in fee in all of the property devised to Mrs. Gregg, this interest being limited upon a double contingency; that is, that Mary A. Gregg should die leaving no issue of her body, and that W. B. Gregg should die before the death of Mary A. Gregg. 20 Am. and Eng. Encyc. of Law, 874, 875.

Thus we see, that at the time of the partition Mary A. Gregg had no interest in that portion of the property devised to William Bowen Gregg, specifically, nor in the undivided half so devised to him; and that William Bowen Gregg had no interest which he could convey so as to bind the class of persons designated as his "nearest heirs" in the undivided half of the property devised to Mrs. Gregg. The result of the partition was therefore to set apart to W. B. Gregg the one-half of the property mentioned in the deed to him from Mary A. Chace in fee simple, being only his interest in it by the will, and to set apart to Mrs. Mary A. Chace, one-half to be held in fee upon the condition expressed in the will, as above quoted, and in which W. B. Gregg had a contingent remainder, upon which was likewise limited the contingent remainder in favor of his nearest heirs. Mrs. Chace acquired no additional title by virtue of the deed from W. B. Gregg, but held the property set apart to her in the partition under the terms and conditions expressed in the sixth item of the will.

William Bowen Gregg having died before the death of Mary A. Chace, and she having died without issue of her body, the property received by her by the will vested in fee in the children of William B.

Gregg, Sr., at her death, and they were entitled to recover it in their cross-action, unless they were estopped by the warranty of their father, William B. Gregg, Sr.

The children of William B. Gregg did not take the property as his heirs, but under the will of their grandfather; therefore, the warranty of William B. Gregg could not estop them to claim this property, unless it was shown that a valuable consideration had passed from Mary A. Chace to William B. Gregg, and that they had received from William B. Gregg property equal to the consideration so paid by Mary A. Chace. But in this case, as has already been shown, there was no consideration passing from Mary A. Chace to William B. Gregg. He received from her nothing but that to which he was entitled before, and for this reason the warranty could not operate as an estoppel upon his children, there being no liability on their part on account of such warranty. A covenant of warranty in a deed can not operate by estoppel to confer upon the grantee greater title than the deed itself would have conferred, if effective. Davis v. Agnew, supra. Since the deed from W. B. Gregg to Mary A. Chace could not under the law confer upon her any title, the clause of warranty contained in that deed could not as estoppel confer any title upon her. For this reason, as well as for want of consideration to support it, the warranty in that deed did not affect the rights of any of the parties.

The parol agreement made between Mary A. Chace and W. B. Gregg, as to their rights in the property lying between the Liberty road and Buffalo Bayou, which was given to W. B. Gregg by the will, and the homestead given to Mrs. Gregg, described as lying between the Liberty road and the New Orleans Railroad, was not a partition, for the reason that there was no joint interest or ownership of the property, which was necessary to support a partition. Davis v. Agnew, cited above. This parol agreement left the parties where they were before, holding the respective pieces of property under the terms and conditions of the will.

The writ of error in this case was granted upon the belief that the Court of Civil Appeals erred in holding that the minor defendants were not estopped by the warranty of their father; but upon a careful examination we have concluded, for the reasons above stated, that there was no error in the ruling of the court upon that question; nor do we find any error in the judgment of the Court of Civil Appeals or of the District Court upon any of the points raised, and the judgments of said courts are therefore affirmed.

*Affirmed.*

Delivered October 28, 1895.