**FIRST NAT. BANK OF BROWNWOOD et al.**
**v. HICKMAN et al.**
**No. 8028.**

Court of Civil Appeals of Texas. Austin.
June 14, 1935.

Rehearing Overruled Dec. 31, 1935.

Woodruff & Holloway, of Brownwood, for appellant First Nat. Bank of Brownwood, Tex.

Oscar Callaway, of Comanche, and Fred O. Jaye, of De Leon, for appellant Mrs. Nettie Hickman.

McCLENDON, Chief Justice.

The bank (First National Bank of Brownwood) sued Roy Hickman and his son Roy Hickman, Jr., upon a promissory note executed by them in favor of the bank, and joined Mrs. Nettie Hickman, the divorced former wife of Roy Hickman, seeking to hold her personally on the note, on the ground that it was a debt of the community estate of herself and Roy Hickman, and that she had received in a partition of the estate property in excess of the note, which she had appropriated to her own use; and also seeking to subject to the payment of the note property still in her hands, which she had received in the partition. Mrs. Hickman, in addition to various defenses which will be later noted where pertinent, claimed a $5,000 indebtedness of the community to her individually, which, in case of any recovery against her, she sought to have made a first charge against the community property which she received in the partition. The judgment, which was upon a directed verdict, was in substance:

1. The bank obtained personal judgment on the note against Roy Hickman, Sr. and Jr., as to whom there is no appeal.

2. The bank was denied personal judgment against Mrs. Hickman.

3. The bank's judgment was made a charge upon the community property (excepting the homestead, as to which no question appears to be raised) partitioned to Mrs. Hickman (execution to be first levied upon any property of the Roy Hickmans) subject to:

4. A first charge against said property in favor of Mrs. Hickman for $5,000, to satisfy her claim against the community.

Both the bank and Mrs. Hickman have appealed; and, except as otherwise noted,

they will be referred to respectively as plaintiff and defendant.

The bank's appeal is directed against the portions of the judgment which (1) deny it personal recovery against Mrs. Hickman and (2) charge the partitioned property in her hands with a first claim in her favor for the $5,000 community debt to her.

Mrs. Hickman's appeal is directed against the portion of the judgment which charges the partitioned property in her hands with a lien to secure the note.

Stated substantially, her contentions are these: The partition, which was effected by voluntary agreement between the spouses just prior to the divorce decree, constituted a conveyance of the property to her by her husband in settlement of her claim against the community, and could not be set aside except for fraud, of which there was no evidence; any excess in the value of the property over her claim constituting a gift to her, which could not be set aside in the face of the record showing that Hickman remained solvent after the partition.

The bank contends, on the other hand, that the record conclusively shows that the advances made by Mrs. Hickman to the community were mingled beyond tracing with community property, and since under then existing statutes she was vested with full control of her separate estate, her claim has no standing in a contest with community creditors. Further it contends that the partition was in no proper sense a conveyance from Hickman to her, either in settlement of her claim or as a gift to her; but was a partition pure and simple, in no way affecting the rights of community creditors to resort to the property partitioned to her, and obligating her personally to account to such creditors for any portion of such property converted by her to her own use.

Mrs. Hickman also contended that the bank through laches had lost whatever rights it at first may have had against her. We regard this contention as without substantial merit, and since it does not seem to be seriously urged in this court, it will not be further noted.

The pertinent facts may be briefly summarized:

Mr. and Mrs. Hickman were divorced on March 18, 1932, in a suit filed by her, wherein she prayed for an accounting and partition of the community property.

The note was executed February 18, 1932, during pendency of the divorce suit, but was in renewal of a note executed the previous August and due the previous December, for a concededly community debt.

All the property embraced in the partition and involved in the suit was admitted to be community.

The partition was consummated the day previous to the divorce decree, in which it was confirmed. It was in form a conveyance to a trustee by Mr. and Mrs. Hickman of all the community estate (listed specifically), and provided in turn for a deed to be executed by the trustee to each of the spouses conveying specific portions of the property.

In the partition Mrs. Hickman assumed an indebtedness against real estate which was set aside to her. All other community indebtedness was assumed by Mr. Hickman.

The following recitative provisions of the partition agreement may be noted:

"Whereas, Roy Hickman and wife Nettie Hickman have permanently separated and will not again live together as husband and wife, and the said Nettie Hickman has filed her suit for the divorce against the said Roy Hickman which is now pending in the District Court of Brown County, Texas, which cause and the pleadings therein are here referred to and made a part hereof.

"And, whereas, it is the desire of the said Roy Hickman and of the said Nettie Hickman to have an amicable adjustment and settlement and division of all of their property and property rights without having to incur the costs of suit therefor and to the end that each shall have own, and hold in severalty the respective properties granted to them respectively;

"Now therefore, know all men by these presents: That for and in consideration of the premises the said Roy Hickman and the said Nettie Hickman do hereby agree on the following division and partition of their property, to-wit: * * *

"4. All of the properties hereinabove set forth and described as passing to the said Nettie Hickman and all increase, rents and revenues thereof and all property hereafter acquired by the said Mrs. Nettie Hickman shall be and is hereby declared to be her own separate property and estate subject only to the liens assumed by her against the respective tracts as herein set out and shall be forever free and quit of any right, title, interest or claim of the said Roy Hickman his heirs, executors or administrators and all of the property hereinabove set

forth and described as passing to the said Roy Hickman and all increase rents and revenues thereof and all property hereafter acquired by the said Roy Hickman shall be and is hereby declared to be his own separate property and estate subject only to the liens assumed by him against the respective tracts as herein set out and shall be forever free and quit of any right, title, interest, or claim of the said Nettie Hickman, her heirs, executors or administrators.

"5. The said Nettie Hickman for herself and of her own free will and accord does hereby expressly declare that she is fully cognizant of all of the property rights and titles belonging to her said husband and herself and she does hereby expressly represent and declare that the division and settlement of the property rights of herself and her said husband as herein contained is just and right, and a full fair and equitable partition and division of all of the property of the said Roy Hickman of the said Nettie Hickman and does hereby expressly agree and declare that the value of the property so conveyed to her is at least one-half of the value of the properties owned by the said Roy Hickman and herself and does expressly declare that she is fully satisfied with said division of their property and that the same shall be to all intents and purposes fully and absolutely binding upon herself, her heirs, executors and administrators."

In the partition Mrs. Hickman was represented by her brother, and Mr. Hickman was represented by his brother. All the assets and liabilities of the community were carefully gone over with a view of an equal partition in net value between the two. The conclusion was reached that there was an equity of about $12,000 each in the property above all liabilities, and the partition effectuated such equal division as nearly as the parties could determine. That this consummation was fairly and equitably achieved is not brought in question by any one party thereto or interested therein.

The evidence with regard to the part Mrs. Hickman's claim against the community played in the partition is without substantial dispute. Mrs. Hickman made claim for an allowance to cover advances she had made to the community, but Mr. Hickman declined to agree to any allowance to her on that account; and in the division, it is agreed by all, that no allowance was made to her by reason of her claim; the net value of the share set aside to each being what was estimated as one-half the net value of the entire estate. No specific mention of Mrs. Hickman's claim is made anywhere in the partition agreement; but it was effectually disposed of so far as concerns the two spouses in the quoted provisions for "settlement * * * of all their * * * property rights," and that each took the respective properties free of any claim of the other (par. 4).

The evidence is without dispute that Mrs. Hickman had at various times turned over to Mr. Hickman various sums of money. We do not, however, regard the evidence as conclusively establishing the amount of these advances to the full extent of $5,000. They were used by Mr. Hickman in his handling of the community estate. No effort was made to trace these funds or any part of them into any specific property held by the community at the time of the partition; nor did Mrs. Hickman seek to establish a trust in her favor in any of the community property. Her claim in this regard is predicated upon the proposition that she was a general creditor of the community and that the partition constituted a conveyance to her in settlement of that claim.

While the estate was heavily involved at the time of the partition, it was estimated by all participating in the division that it had a net value of approximately $25,000, and that the share allotted to Mr. Hickman had a fair net value of approximately $12,000 above all liabilities he assumed, which included the bank's debt. A great deal of the testimony is upon this phase of the case. It was clearly sufficient to warrant a finding of solvency at that time. In the view we take of the case, however, that question is unimportant, and it may be assumed for our present purposes that solvency was conclusively established.

We concur in the bank's contention that the effect of the partition agreement was in no proper sense a conveyance by Mr. to Mrs. Hickman; but was only a partition of their several interests in the community property. The instrument on its face, and by its recitals, throughout purported to be nothing more. The oral testimony, as to the manner in which the division was arrived at, confirms this view. To import into the transaction the element of a gift from husband to wife, would not only do violence to the language which the parties employed to express their intentions, but would attribute to the spouses motivating considerations not readily to be deduced from their then existing relations as expressed in the opening "whereas" of their agreement.

In discussing the subject of partition of the community property upon dissolution of the marriage by divorce, Judge Speer, in his "Law of Marital Rights in Texas," § 630, says: "As to property not exempt, and upon which creditors might lawfully levy a writ for the satisfaction of their demands, the court has no power to award the same to their prejudice. In truth, however, the partitioning of the community property is not a disposition of it at all. There is no change of owners, but a mere ascertainment and separation of the interests theretofore existing in common. It remains subject to the demands of creditors."

And this is the general effect of a partition between joint owners, which, as said in Chace v. Gregg, 88 Tex. 552, at page 558, 32 S.W. 520, 522: "Does not confer title upon either, but has the effect only to dissolve the tenancy in common, and leave the title as it was before, except to locate such rights as the parties may have, respectively, in the distinct parts of the premises, and to extinguish such rights in all other portions of that property."

There is, in this regard, no distinction between a decree of partition and one voluntarily made by the parties. See Walling v. Harendt (Tex.Civ.App.) 37 S.W.(2d) 280 (error dismissed).

In Grandjean v. Runke (Tex.Civ.App.) 39 S.W. 945, 946, it was held: "Upon the dissolution of the marriage, she [the wife] became jointly liable with her divorced husband for its [a community debt's] satisfaction, to the extent of the community property received by her."

The decision in this case was expressly approved by the Supreme Court in Boyd v. Ghent, 93 Tex. 543, 57 S.W. 25, 26, in the following quotation: "The judgment in favor of Ghent against Trigg was rendered for a community debt of Trigg and his wife, and the land, being their common property, was liable for this debt, and would have been if it had been set apart to the wife in the proceedings for a divorce before the judgment was rendered against Trigg. Grandjean v. Runke (Tex.Civ.App.) 39 S.W. 945."

In Security National Bank v. Allen (Tex. Civ.App.) 261 S.W. 1057, the court gave a "separation agreement" partitioning the community property the same effect as a deed of gift from the husband to the wife; holding that in order to subject to a community debt the property partitioned to the wife, it was essential to set aside the

agreement, which could only be done where the facts brought it within the rules governing conveyances in fraud of creditors. The opinion seeks to distinguish that case from the Grandjean and Boyd Cases on the facts. Regardless of any difference in fact combination, we regard the above quotations from those cases as correct enunciations of legal principles, deduced from our decisions adjudicating community property rights and liabilities. The Allen Case does not appear to have reached the Supreme Court, or to have been cited upon this holding.

The above announced principles are conclusive of the rights of the bank against Mrs. Hickman personally to the extent that she may have converted community property partitioned to her, and charging the nonexempt community property still in her hands with an equitable lien.

A consideration of Mrs. Hickman's rights regarding her claim against the community divides into two inquiries: (1) Whether such claim constituted a community debt at the time of the partition; and, if so (2) the effect of the partition thereon.

It is not seriously questioned by the bank that if the transactions in evidence had arisen prior to the statute (Vernon's Ann. Civ.St. art. 4614) giving the wife control and management of her separate estate, she would be a general creditor of the community to the extent of her advances to the community.

The bank contends, however, that this statute places her in the same attitude as the husband with respect to her legal relations to the community property and liabilities, invoking the following rule applied in Edelstein v. Brown (Tex.Civ.App.) 95 S.W. 1126, affirmed 100 Tex. 403, 100 S. W. 129, 123 Am.St.Rep. 816: "Where a husband has so commingled his separate property with the community property as to be unable to identify it, he cannot, on the dissolution of the marriage, charge the community estate with the value of his separate estate."

See, also, Robb v. Robb (Tex.Civ.App.) 41 S.W. 92; Moor v. Moor, 24 Tex.Civ. App. 150, 57 S.W. 992 (reprint 255 S.W. 231); Speer's "Marital Rights," § 389.

This principle is deduced from the fact that exclusive management of the community estate as well as that of his own is vested in the husband. No change was wrought by the statute in this exclusive control in the husband over the community estate; as to which the wife is still as much

excluded as a stranger to the community. We do not believe the fact of her control over her separate estate bars her as a creditor of the community to the extent that she has advanced funds thereto, merely be- cause the husband has commingled those funds with those of the community so as to prevent their specific tracing. To create such bar, we believe the facts should be such as to constitute a gift by her to the community.

■ As we construe the partition agree- ment and the negotiations leading up to it, Mrs. Hickman relinquished her claim against the portion of the community estate which was partitioned to her husband. As between the spouses, that portion of the estate became primarily liable for the com- munity debts which Mr. Hickman assumed, and the portion partitioned to her as well as her separate estate became primarily liable for the debts assumed by her. The effect of the agreement, therefore, was, as between the spouses, to merge her claim in the title she acquired. The rights of all community creditors to resort to the entire nonexempt community estate were in no way affected by the partition; although it is manifest that Mrs. Hickman did not contemplate that her portion of the estate would be resorted to to discharge any of the debts which Mr. Hickman assumed. It follows, we think, that as between her and such creditors her claim against the community became a first charge against such property, as de- creed by the trial court.

Under this holding, the amount of her claim should be offset against the value of such property partitioned to her as she may have converted to her own use. If the balance be in favor of the community, it should be applied to the bank's debt as a personal charge against her. If in her favor, it should be decreed a first charge against the nonexempt community property still in her hands. Subject to the foregoing, the bank is entitled to the equitable lien decreed by the trial court, execution to be first levied upon any property of the Roy Hickmans as in said decree provided.

As between the bank and Mrs. Hickman, the trial court's judgment is reversed and the cause remanded to that court for trial in accordance with the above holdings. Costs of appeal are taxed equally against them. The bank's judgment against the Roy Hickmans is undisturbed.

Reversed in part and remanded; other- wise undisturbed.

## On Motion for Rehearing.

The bank contests our holding that Mrs. Hickman's claim against the community estate is entitled to preference in payment out of community property partitioned to her over that of the bank.

The bank's contentions in this regard may be thus epitomized:

Conceding that at the time of partition she was a general creditor of the com- munity, the partition was merely a segrega- tion of title between the spouses, and the property partitioned to her was charged with the payment of community debts, the creditors not being party to the partition nor bound thereby. It would be inconsistent to hold, as stated in our opinion, that the partition was in no sense a conveyance, and at the same time to hold that as to community creditors her claim was merged in the title she acquired in the partition. Her claim was not allowed in the parti- tion. As between her and the principal debtor, it was waived and extinguished, and could not be asserted to the prejudice of creditors who had no part in the partition.

It is not questioned that we have fairly stated the pertinent controlling record facts in this regard. The issue is therefore one of proper analysis of those facts, and ap- plication thereto of correct legal principles.

If Mrs. Hickman had a valid claim against the community at the time of the partition, then the partition had one of two possible effects upon that claim, in so far as com- munity creditors were concerned: Either (1) it was altogether extinguished by the partition (as the bank asserts); or (2) it was merged in Mrs. Hickman's segregated title to the property partitioned to her.

In order to hold that the claim was ex- tinguished altogether, it is necessary to con- strue the partition agreement as a gift by Mrs. Hickman to the community generally, including the community creditors whose claims were assumed by Mr. Hickman, and from which the partition agreement express- ly provided that her portion of the prop- erty should be free. The agreement does not expressly mention Mrs. Hickman's claim, or provide what effect thereon the partition shall have, further than that in so far as Mr. Hickman personally or his portion of the property is concerned, Mrs. Hickman has no further right or claim. We must therefore determine the effect of the agreement in this regard from its other provisions and the surrounding circum-

stances, in so far as they may throw light upon the intention of the parties. From these facts and provisions, we have the following: Mrs. Hickman had a valid claim against the community estate. Mr. Hickman was unwilling to recognize this claim in a division of the estate. Mrs. Hickman was willing to accept the portion set aside to her in full both of her interest in the estate and of any other claims she might hold against Mr. Hickman or any of the property set apart to him; he, however, assuming certain community debts, including that of the bank, and the property set apart to Mrs. Hickman being free of such debts. It is quite clear that it was not in the contemplation of the parties that Mrs. Hickman's portion should ever be resorted to to discharge any of these debts. Anything she gave up in the partition constituted a part of the consideration for what she got in the partition. She contracted to get the portion allotted to her free of these community debts; and the relinquishment of her claim entered into the consideration for that obligation. Of course, that obligation was not binding upon the creditor bank. But under what equitable principle can it assert that Mrs. Hickman's claim was relinquished as to it, where, in order to assert its rights against her property, it must deny the effectiveness as to it of the very instrument under which it must assert, if at all, the relinquishment of her claim?

We think clearly the entire transaction negatives any purpose or intention of the parties to the agreement to cancel Mrs. Hickman's claim in the event creditors, whose claims were assumed by Mr. Hickman, should thereafter seek to resort to her portion of the property.

This conclusion we think inevitable regardless of the fact that no additional allowance was made to Mrs. Hickman as representing this specific claim. It follows from the fact that she relinquished all claims against Mr. Hickman and his portion of the property in consideration of receiving her portion thereof free from the claims assumed by him. As between the spouses, each took the allotted portion free of the claims of the other and of community debts assumed by the other. But the facts stated will not admit, we think, of the construction that she intended to relinquish any claim she might have against the community in favor of creditors whose claims were assumed by Mr. Hickman, as between whom and her she took the prop-

erty free of such claims. We therefore think that as between her and creditors whose claims were assumed by Mr. Hickman, there was a merger of her claim in the segregated title she received under the partition.

If this holding is inconsistent with the expression in our original opinion that the partition was in no sense a conveyance, then that expression is inaccurate to the extent of her claim. A more exact statement would be that the partition was a conveyance to her to the extent of any valid claim she might have against the community at the time of the partition, and beyond that it was merely a partition and segregation of the title.

There is nothing in this holding inconsistent with that in Boyd v. Ghent, supra. There the community creditor obtained an abstract of judgment lien upon the community property before the divorce decree was entered which decreed a lien in favor of the wife. At the time the judgment lien attached, the wife had no claim against the property other than that of a general community creditor. It is not seriously questioned that Mr. Hickman could have discharged the community debt of his wife by conveying to her community property to the value of the debt. We think the effect of the partition agreement in so far as concerned community creditors was both a satisfaction of her interest in the community estate, and a merger of her claim in the title she acquired in the partition.

■ Exception is also taken to that portion of the opinion limiting the amount of offset to Mrs. Hickman's claim "to the value of such property partitioned to her as she may have converted to her own use." The point, in this regard, is that Mrs. Hickman was liable to community creditors for the value of all community property which was partitioned to her, whether or not converted by her. This is correct. However, the bank was not entitled to an equitable lien upon specific partitioned property, and at the same time to recover a personal judgment for the value of that property. It had the right either to have the specific property subjected to its debt, or to hold Mrs. Hickman personally liable for its value. It could not do both.

The sentence in which this quotation occurs is therefore corrected to read: Under this holding the amount of her claim should be offset against the value of the property partitioned to her other than that upon

which the bank is seeking to establish an equitable lien.

With this modification of the opinion, the motion is overruled.

Opinion modified; motion overruled.