Ramon HOUSTON, Administrator, et al.,
Appellants,

v.

Billy Roy HARBERGER et al., Appellees.

No. 16494.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 21, 1964.

Rehearing Denied April 17, 1964.

DeVore, Ashworth & McGahey, Arlington, Pannell, Dean, Pannell & Kerry, Fort Worth, Grindstaff, Zellers & Hutcheson, Weatherford, and Turner & Seaberry, and Virgil T. Seaberry, Eastland, for appellants.

Borden & Hand, and I. B. Hand, Weatherford, for appellee Billy Roy Harberger.

V. P. Craven and Ben Hagman, Weatherford, for appellee Roy Harberger.

MASSEY, Chief Justice.

Walter R. Woodhouse made his will in 1921. He died in 1921. His wife, Mary E. Woodhouse, made her will in 1922. She died in 1930. These wills, in all respects material to our decision upon the matter of their proper construction, are identical. Through trial and error we have concluded that this opinion will be more readily understood if the two wills be treated as one, with provisions of both treated (for purposes of the opinion) as though they were in a single will, which we will hereinafter term the Woodhouse will.

Mrs. Martha Edna Martin, now deceased, was one of four children of Walter R. and Mary E. Woodhouse. She had two brothers, Lawrence Woodhouse and B. F. Woodhouse, and one sister, a Mrs. Lula Martin, all now deceased. Martha Edna Martin died in 1952 without a surviving child, and she never had a child born to her. She did leave a will. By this will she attempted to deal with certain realty in the City of Weatherford, Texas as though she owned a fee simple estate. This property, "All that certain lot, tract or parcel of land lying and being situated in Weatherford, Parker County, Texas, and being the North part of Lot No. 6 in Block No. 12, Original Town of Weatherford, and being a 25 foot lot", was received by her under paragraph No. 4 of the Woodhouse will. It will be referred to hereinafter as the "Ella Gibson property".

Under Mrs. Martin's will Billy Roy Harberger purportedly received the Ella Gibson property. If such property could be given to him thereby it would be by reason of title which vested in Martha Edna Martin under paragraph seven (No. 7) of the Woodhouse will, either upon the death of her parents or upon the death of Ella Gibson, both events having occurred at a time when Mrs. Martin was alive. It is our holding that Mrs. Martin received no devisable interest therein under the Woodhouse will and Billy Roy Harberger received no interest in the property under the Martin will, but that said property passed to other persons under the provisions of paragraph four (No. 4) of the Woodhouse will.

Provisions of the Woodhouse will, paraphrased, provided: Paragraph three: "* * * I give and devise to my son, Lawrence Woodhouse * * * (property here described). * * * To have and to hold the same for and during his natural life, with contingent remainder to his children, in case he shall have any children born to him,—but in the event he should die without issue the remainder shall descend and vest in my grandchildren per capita, share and share alike, to be held by them without partition, alienation or incumbrance, until the youngest shall become twenty-one years of age."

Paragraph four: "* * * I give and devise to my daughter, Martha Edna Martin

* * * (property here described, other than the Ella Gibson property) * * * also * * * lots * * * six (6) in Block twelve (12) in Weatherford, Texas, (the Ella Gibson property) * * * excepting the life estate (therein) bequeathed to Ella Gibson. * * * To have and to hold all the said property for and during her natural life, with contingent remainder to her children in case she shall leave any children surviving her, but in the event said Martha Edna Martin shall die without issue the remainder of the estate shall descend and vest in my grandchildren per capita, share and share alike, to be held by them in common without partition, alienation or incumbrance, until the youngest of said grandchildren shall become twenty-one years of age."

' Paragraph seven: "In appreciation of the services rendered and to be rendered * * by Miss Ella Gibson, I give, devise and bequeath to her, the said Ella Gibson, the use, rents and revenues of * * * (the Ella Gibson property) * * * for and during her natural life, *with remainder to my daughter, Martha Edna Martin,* the life estate of said Ella Gibson in said property * * * shall end at the death of said Ella Gibson * * * and the said property at the death of the said Ella Gibson *shall revert to my daughter, Martha Edna Martin.* * * *"* (Emphasis added.)

Five grandchildren of Walter R. Woodhouse and Mary E. Woodhouse were alive at the times both died. They were (1) Jack Martin, (2) Don Martin, (3) Mrs. Cliffie Allen, (4) Mrs. Elizabeth Shade, and (5) Mrs. (Roy) Patty Harberger. Mrs. Harberger died in 1938, before the time Martha Edna Martin died in 1952, and the time Lawrence Woodhouse died in 1954. The other four of the grandchildren were alive after 1954.

We will first consider the question of whether Martha Edna Martin received any devisable estate in the Ella Gibson property under paragraph seven (No. 7) of the Woodhouse will, or whether it was only the life estate therein which she received under the provisions of paragraph four (No. 4) of the same will.

■ We are of the opinion the effect of the two paragraphs was to give Mrs. Martin a life estate in the property, burdened by the prior life estate given to Ella Gibson, and which life estate she began to enjoy upon the death of Miss Gibson. As of the time of Mrs. Martin's death she held no part of the fee interest in said property, but a life estate only. It was not within her power to make a devise of the property by her will, hence the Martin will did not operate to devise the same to Billy Roy Harberger. He received no interest in the Ella Gibson property by reason of the provisions of the Martin will purporting to devise it. Title thereto descended and vested under paragraph four (No. 4) of the Woodhouse will.

■ While the greatest estate under a will should be conferred on a devisee that the terms of the devise will permit, and while it is proper to say that fee passes when an estate is given in one part of a will in clear and decisive terms it is not cut down and reduced to a lesser estate by subsequent terms not equally clear and decisive, yet do we believe that the principles stated have no application here. Paragraph No. 7 of the Woodhouse will was not specific in respect to any fee devised to Martha Edna Martin, and the fact that she might have thought she received the fee is of no moment. Our holding is that where one part of a will speaks of a particular property and states that a life estate therein is to be received by a named devisee, subject to a life estate bequeathed to another devisee, the fact that the paragraph which purports to deal with the life estate given to such other devisee contains as part of its provisions the statement that at the end of the life estate of such other devisee the described property "shall revert to" the devisee first named,— or that said first named devisee shall, upon the termination of the other devisee's life estate, have the "remainder",—does not

contradict that part of the will wherein the first is given a life estate, nor may it be construed to enlarge the estate to which the first named devisee will succeed.

■ ■ The primary rule is that all parts of a will shall be harmonized if possible. Calvery v. Calvery, 1932, 122 Tex. 204, 55 S.W.2d 527. Here the rule has ready application in harmony with our holding. Where it is practicable, a latter clause in a will must be deemed to affirm, not to contradict, an earlier clause in the same will. Jones' Unknown Heirs v. Dorchester, 1920 (Tex.Civ.App., Amarillo), 224 S.W. 596, 601, writ dism. See also Burney v. Burney, 1946, 145 Tex. 311, 197 S.W.2d 334, 336.

Having determined that no interest in the property devised by paragraph No. 4 of the Woodhouse will was ever received by Billy Roy Harberger (through the will of Mrs. Martha Edna Martin), we proceed to the question of a proper determination of when the property devised and bequeathed by both paragraphs Nos. 3 and 4 of the said will vested in the "class" created thereby, to-wit: the "grandchildren".

The names of the five grandchildren alive when the Woodhouse will was made have already been given. It has been stated that only four of them were alive in 1952 and 1954, Mrs. Patty Harberger having died in the interim period, leaving her husband, Roy Harberger, and one child, Billy Roy Harberger. Our conclusion with reference to the individuals who received the bounties provided in said paragraphs Nos. 3 and 4, as members of the "class" to receive the same, did not include Mrs. Patty Harberger, but only the other four of the Woodhouse grandchildren. Basis of our holding lies in the times at which the fee in devised property vested, in part in 1952 when Martha Edna Martin died, and in part in 1954 when Lawrence Woodhouse died.

In view of our conclusion that Mrs. Patty Harberger never received anything under the foregoing paragraphs of the Woodhouse will, neither Roy Harberger, her surviving husband, nor Billy Roy Harberger, her surviving son, became heir to any part thereof by and through her. It is of interest to note that Billy Roy Harberger did become vested with an interest in the same property in 1958, by reason of the death of his aunt, Mrs. Cliffie Allen, intestate. He was one of a number of persons who inherited a share of Mrs. Allen's estate. This fact, however, is of no moment for the controlling question for our determination may be considered as determined at any time after the date of Lawrence Woodhouse's death in 1954, as to the whole of the property under consideration, whether devised under paragraph No. 3 or paragraph No. 4 of the Woodhouse will.

Construction of paragraphs three and four of the Woodhouse will, if we are correct, provides a basis in law for any necessary adjudication of title as to any of the property therein devised, and which is now vested. As heretofore indicated, we hold that an undivided one-quarter interest in all of the property became vested in Jack Martin, Don Martin, Mrs. Elizabeth Shade, and in Mrs. Cliffie Allen before she died.

Our problem of construction may be simplified by treating the language to be construed as reading: "I give and devise this property to my son and daughter, Lawrence Woodhouse and Martha Edna Martin, to have and to hold for their natural lives, with contingent remainder to their children in case they or either of them shall leave one or more surviving, but in the event they both should die without issue the remainder shall descend and vest in my grandchildren per capita, share and share alike, to be held by them without partition, alienation or incumbrance, until the youngest shall become twenty-one years of age."

The parties to the controversy upon the matter of construction are in accord that the devise was to a "class" of persons, individuals comprising the same to take the fee at some particular time, but disagree upon the matter of whether Mrs. Patty Harberger was one of the individuals holding mem-

bership in the "class" at the time of the vesting of the fee interest.

The question is: "There having been a gift to a 'class', at what date did the gift take effect and who were the individuals who took the gift because of their membership in the 'class' at that material time?"

Under general rules "remainders" given under wills to children of life tenants whose tenancy is provided by such wills ordinarily vest at once in the persons who, at the death of the testators fall within the general term of designation, subject only to opening to allow for the equal interests of children later born. Even prior to time of their enjoyment of possession their title is "vested" and alienable. Children of a life tenant are·of course a class of persons and a remainder to them is to a "class" in the colloquial sense. They are not, however, members of a "class" in the *legal sense,* for the *legal concept* of a class gift is that it is one to a body of persons, uncertain in number at the time of the gift and to be ascertained at a future time, and who consequently will take individually "contingent" upon their being *in esse* at that time. Under general rules "remainders" given under wills to a "class" (in the *legal sense)* vest in the individuals who are members thereof at the time the "remainder" vests in the "class". 57 A.L.R.2d 103, 112, Annotation: "Character of remainder limited generally to the life tenant's children" ; 75 A.L.R. 773, 807, Annotation: "When may gift by will or deed of trust be considered as one to a class",—supplemented at 105 A.L.R. 1394. See also 33 A.L.R.2d 242, Annotation: "Time as of which members of class described as remainderman's or life tenant's 'heirs,' * * * or the like, substituted by will to take in place of deceased remainderman, are to be ascertained." Informative, though not directly in point, is 6 A.L.R.2d 1342, Annotation: "Time of ascertainment of membership with respect to devise or bequest to a class which takes effect at testator's death."

Stated another way: A "contingent" estate is one the "vesting" of which is conditioned upon the person or persons who answer the description of taker or takers of the property cannot be ascertained until the termination of the precedent or particular estate, the right to take dependent or contingent upon the fact of his or their being alive or having survived until that time, or the right to take conditioned upon some other event the happening of which is uncertain. 32 Tex.Jur., p. 836, "Perpetuities and Restraints, Etc.", § 10, "—Meaning of 'Vested'—Intention as Decisive Factor" ; 36 Tex.Jur., pp. 876, 877, "Remainders and Reversions", § 6, " 'Vested' Estates or Interests", and § 7, " 'Contingent' Estates".

We find great caution required in arriving at our decision in this case, for we have little doubt but that both testator and testatrix probably desired, and would have in all likelihood provided that children of their deceased grandchildren stand in the place of their parents for purposes of receiving their gifts, had they thought of the contingency that one or more of their natural grandchildren might die before the bequest to "grandchildren" took effect, leaving child or children surviving. We may not so speculate, however, but must be bound by the ascertained provisions of the wills in respect to what testator and testatrix did therein provide; and if the intention of said persons be not clearly expressed by the particular language used, it may be found by looking to the provisions of the will as a whole and to the circumstances surrounding its execution. In paragraphs 3 and 4 of the Woodhouse will the testator and testatrix obviously chose to specify the fact that any vesting of the "remainder" in a surviving child or children of the son Lawrence Woodhouse and of the daughter Martha Edna Martin, if any, was "contingent" upon such child or children being alive at the date of death of his or their designated parent. Were this a matter for construction we would likewise be obliged to treat the devise as a "contingent remainder"

(or as "contingent remainders") under the case of Guilliams v. Koonsman, 1955, 154 Tex. 401, 279 S.W.2d 579, 57 A.L.R.2d 97, and the other authorities therein cited.

 The "contingent remainder" provides in the case of children born to Martha Edna Martin and/or Lawrence Woodhouse never became "vested" as an estate in any issue of their bodies for both died without any surviving child. The first stated "contingency", upon which any "vesting" of such an estate should arise, never occurred. The "remainder" to "grandchildren" was secondarily dependent and "contingent" thereupon. It has been said that "There cannot be a vested remainder after a contingent remainder in fee simple." Gray: The Rule Against Perpetuities (4th Ed.), p. 105, § 113.2 (Tex. to Footnote 1).

 The "alternative contingent remainder", or the remainder given the "grandchildren" upon the "contingency" that there be no children of Martha Edna Martin or Lawrence Woodhouse alive to take the bequest made to them as the first "contingent remaindermen" is somewhat difficult to define by name. Whatever be the proper nomenclature its operation was either predicated upon a contingency which never occurred (whereby the "vesting" of any estate in said "grandchildren" should itself properly be treated as "contingent" because it was conditioned upon an antecedent contingency),—or it was independently "contingent". Assuredly, it was furthermore requisite under the will, and under all recognized rules of construction, that at least one of the "class" termed "grandchildren" (in the *legal sense*) be alive to take the "alternative contingent remainder" provided thereunder at the termination of the life estate(s) of Martha Edna Martin and/or Lawrence Woodhouse. The application of the law in such a case would be no different from an application of the same law to the more common type of case where the vesting of an estate in children, if any, born or to be born to a life tenant, is conditioned upon their being alive to take at the time of the termination of the life tenant's precedent or particular estate.

 In addition to the authority already cited, Guilliams v. Koonsman, supra, we desire to mention the case of Robertson v. Garrett, 1888, 72 Tex. 372, 10 S.W. 96, wherein Judge Stayton seems to have applied the rule here recognized although not stating it; the case of Chace v. Gregg, 1895, 88 Tex. 552, 32 S.W. 520, wherein Judge Brown termed an estate similar to that under consideration as "a contingent remainder, upon which was likewise limited the contingent remainder in favor of his (Gregg's) nearest heirs" ; and the case of Spaight v. American National Bank, 1962 (Tex.Civ.App., Austin), 356 S.W.2d 490, error refused, wherein Judge Hughes, in considering the provisions of a will, which were no more definite than the provisions here under consideration, held that the language directing disposition of testatrix' property was prospective in nature, not ascertainable at her death, but determinable as of the date of the death of the survivor of her daughters. The rule as stated in Walker v. Thornton, 1910 (C.C.A. of Texas), 124 S.W. 166, error refused, is stated thus: "The rule for determining whether a bequest or devise is a vested or contingent one is that, when the time of division is of the substance of the gift, it is contingent, but, when the time is mentioned only as a qualifying clause of payment or division, it is vested."

 Our conclusion is that the provisions of the pertinent paragraphs of the Woodhouse will gave named children each a life estate in property, with further provision for vesting of "remainders" as to the parcels to each, under two alternatives. Each of said alternatives could be correctly termed "alternative contingent remainders", with the second of the alternatives to have force and effect only in the event the "remainder" could not vest under the first of the alternatives. In other words, the will provided that the children of Martha Edna Martin and/or Lawrence Woodhouse would

receive the "remainder" through their respectively named parent or parents "contingent" upon their being alive to receive the same;—and if and in the event the contingency for which such provisions was made never occurred, then, and only in that event, the grandchildren alive at that time, if any, would take the "remainder" in their place and stead. The latter contingency was conditioned upon an event certain to occur, the deaths of Martha Edna Martin and Lawrence Woodhouse,—and upon events which were uncertain, i. e., that one or more of the "class" mentioned, the "grandchildren", be alive at that time, and that no issue of said persons alive and *in esse* at the same time.

The circumstances, one certain and the other two uncertain, were made prerequisite to any entitlement of the "grandchildren" to a devise of the fee under paragraphs 3 and 4 of the Woodhouse will.

 The property which vested in the "grandchildren" because of Martha Edna Martin's death did so vest at the time of her death in 1952. Patty Harberger was dead at that time. Therefore she was not a member of the "class", the individuals comprising which were made heirs to the Woodhouse property upon the termination of Martha Edna Martin's life estate. The property which vested in the "grandchildren" because of the death of Lawrence Woodhouse did so vest at time of his death in 1954. Patty Harberger was dead at that time. Therefore she was not a member of the "class", the individuals comprising which were made heirs to the Woodhouse property upon the termination of Lawrence Woodhouse's life estate. Since Patty Harberger received nothing from the estate of testator and testatrix, at least under provisions of paragraphs 3 and 4 of their wills, Billy Roy Harberger received nothing by and through her or in her place and stead and her surviving husband, Roy Harberger, likewise received nothing. The court below fell into error in its contrary conclusion.

In a case where the situation was essentially identical to that in the case before us the Illinois Supreme Court made a holding which was in accord. Drury v. Drury, 1915, 271 Ill. 336, 111 N.E. 140.

Judgment rendered below is reversed. Judgment is here rendered in construction of the wills of Walter R. Woodhouse and Mary E. Woodhouse that paragraphs 3 and 4 thereof disposed of said deceased persons' entire interests in the property therein described, and that under the provisions thereof, and in view of the events which have occurred since the deaths of Walter R. and Mary E. Woodhouse, title to said property in equal portions, undivided, became vested in Don Martin, Jack Martin, Mrs. Elizabeth Shade, and in Mrs. Cliffie Allen, deceased, or her estate, and in the individuals who are her (Mrs. Allen's) heirs.