528

### MYRTLE J. WOOD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56067.   Filed December 15, 1958.

*Robert J. Hobby, Esq.,* and *Wentworth T. Durant, Esq.,* for the petitioner.

*David E. Mills, Esq.,* for the respondent.

TRAIN, *Judge:* Respondent determined deficiencies in petitioner's income taxes and additions to the tax for the years 1951 and 1952 as follows:

| Year | Deficiency | Additions to the tax | |
|---|---|---|---|
| | | Sec. 294 (d) (1) (A) | Sec. 294 (d) (2) |
| 1951 | $855.74 | $67.14 | $44.77 |
| 1952 | 552.53 | 56.45 | 37.64 |

The issues are (1) whether petitioner is taxable on one-half of the income from a 45 per cent interest in a joint oil venture during the years in question; (2) whether the amount of income allocable to one-third of the one-half interest, which petitioner assigned to Sam I. Pittman, is taxable to her; and (3) whether respondent computed the allowance for depletion on gross income as required by sections 23 (m) and 114 (b) (3) of the Internal Revenue Code of 1939. The remaining issues with respect to the additions to the tax have been conceded by the respondent.

#### FINDINGS OF FACT.

Some of the facts are stipulated and are hereby found as stipulated.

Petitioner, Myrtle J. Wood, is an individual residing in Dallas, Texas. She filed an individual income tax return for the year 1951 with the then collector of internal revenue for the first district of Texas, and an individual income tax return for the year 1952 with the director of internal revenue at Dallas, Texas.

Petitioner and Fred M. Wood were married during the year 1925, and were husband and wife until their divorce on March 24, 1951. At all times during their marriage they were residents of the State of Texas. During their marriage, petitioner and Fred acquired certain oil properties which they held as community property. At some time prior to 1946, the major portion of these properties was placed in a joint venture with Pierce Withers and Robert W. McCullough. The agreement between these individuals was oral.

On June 1, 1946, Fred M. Wood, Robert W. McCullough, and Winston Carter, vice president of the Union National Bank of Houston, as guardian of the estate of Pierce Withers, n. c. m., executed a letter agreement with respect to the Withers-Wood-McCullough venture. This agreement provides in part, as follows:

We are accordingly today executing to you as Guardian of the Estate of Pierce Withers, an assignment of all of our interest in the oil and gas production from the properties listed in Exhibit A, and in all funds now on deposit to the joint account. We agree that this assignment shall remain in effect as to all of the properties covered thereby until Withers has received thereunder the full amount he is entitled to recoup out of production. The amount to be recovered by Withers will be the total of all advances heretofore made by him plus all amounts paid out by you upon outstanding bills and claims, less the cost of drilling Zarsky Well No. 1 and State Well No. 3, both of which were dry holes and chargeable under our agreement to Withers, and less the cost of certain capital additions to a drilling rig owned by Withers and which were paid for through the joint account. We agree that all other expenditures will be considered as referable to producing wells, or to producing operations, and accordingly recoverable by Withers. A complete accounting will be prepared, which will be subject to check, verification and audit by you, and which will correctly reflect the cost of the two dry holes above mentioned. We will promptly supply you with an inventory of the drilling rig and rig equipment owned by Withers which is now stacked at Kingsville.

Under the assignment of oil and gas runs above mentioned, you will receive the proceeds of all production from these properties. Necessary operating expenses, consisting of a salary of a gauger and a bookkeeper, and other necessary normal expenses of operating the property, (including ad valorem taxes upon the property, and the gross production taxes upon production, but not including, however, any salary or disbursement of any kind to Wood or McCullough except as may be hereafter agreed upon by you and us) for each month will be first paid out of the receipts for such month. The balance of the receipts will be retained by you and applied as payments upon the amount Withers is entitled to recoup, as above provided.

The partnership or joint enterprise heretofore existing between Withers and ourselves is dissolved. Hereafter each of us shall separately own in undivided interests our respective fractional interest in the properties listed in Exhibit A, it being understood that the interests of Wood and McCullough therein are

burdened by and subject to the assignment of oil and gas runs above mentioned. Neither of us will incur or seek to bind either of the others with respect to any item of expense (except our respective proportions of normal operating expenses above mentioned), without the written consent of each of the others. It is understood that neither you nor we are binding or committing ourselves in any way in connection with the continued operation of the property, and that each of us shall have the right of sale at any time (any sale by Wood or McCullough, however, to be subject to the assignment of production above mentioned above [sic]), and to pursue any legal remedies in connection with such sale as considered advisable. Upon any sale of the above properties, the entire proceeds received from the sale shall be first applied to the extent required to repay to Withers the amount he is entitled to recoup from said properties. We understand that you are not assuming on behalf of Withers any obligation as to operation, or any liability for our portion of operating expenses, except as to the method of payment above mentioned. If the receipts from production for any month should be insufficient to pay the operating expenses for such month, we agree to pay our respective proportions of the deficiency.

On March 24, 1951, petitioner was granted a divorce from her husband by the 117th District Court of the State of Texas in the County of Nueces, Texas. Incorporated in the divorce decree was the property settlement which provided, in part, as follows:

IT IS ACCORDINGLY ORDERED, ADJUDGED AND DECREED that Plaintiff, Myrtle Wood, do have and she is hereby given and awarded as her separate property and estate, the following properties:

\*        \*        \*        \*        \*        \*        \*

(3) A one-half interest in that 45% interest owned by the community in connection with the Pierce Withers estate at Houston, Texas, or a total to the Plaintiff of 22½% of said interest after the payment of community debts with a provision that Fred M. Wood will assume Ten Thousand ($10,000.00) Dollars of the existing community debt of the approximate total of Twenty-Five Thousand Five Hundred Ten ($25,510.25) and 25/100 Dollars;

\*        \*        \*        \*        \*        \*        \*

IT IS FURTHER ACCORDINGLY ORDERED, ADJUDGED AND DECREED that Defendant, Fred M. Wood, do have and he is hereby given and awarded as his separate property and estate, the following properties:

\*        \*        \*        \*        \*        \*        \*

(4) That he shall have as his separate property and estate one-half of the 45% interest of the Fred Wood interest connected with the Pierce Withers estate at Houston, Texas, said property being located in Refugio County, and that he will assume one-half of any existing indebtedness thereon;

(5) That he assume the balance of Ten Thousand ($10,000.00) Dollars of the community debts of the existing approximate total of Twenty-Five Thousand Five Hundred Ten and 25/100 ($25,510.25) Dollars, after the parties hereto have paid out of the 45% interest owned by the parties in connection with the Pierce Withers estate, the difference, to-wit: Fifteen Thousand Five Hundred Ten and 25/100 ($15,510.25) Dollars.

On April 6, 1951, petitioner assigned one-third of her interest in the properties operated by the Withers-Wood-McCullough agreement to her attorney, Sam Pittman, in consideration for his services in

representing her in the divorce proceedings. This assignment was filed for record in Nueces County, Texas, on May 21, 1951.

The income from the one-half interest in the 45 per cent interest in the Withers-Wood-McCullough properties for the year 1951 was in the amount of $4,478.05 and for the year 1952 was in the amount of $2,751.04. Petitioner did not receive any of these sums nor had she received any sums from the interest prior to June 13, 1957.

On November 17, 1955, Heard & Heard, Inc., a creditor of the prior community estate of Fred M. and Myrtle J. Wood, commenced suit in the District Court of Refugio County, Texas, entitled *Heard & Heard, Inc.* v. *Fred M. Wood, et al.* (an unreported case), against Myrtle J. Wood and 20 other defendants, on behalf of all other creditors of the former community and sought to enforce the rights of the creditors in the Withers-Wood-McCullough properties. Petitioner filed appearance in the Refugio County District Court and on various dates filed a total of five different pleadings in the suit brought against her. On June 13, 1957, the District Court of Refugio County entered its decision and decree which provided in part as follows:

It FURTHER APPEARS TO THE COURT from the evidence adduced at the trial of this cause, and the court finds as a matter of fact and of law, that the divorce decree hereinabove described which was rendered in the case of Myrtle Wood vs. Fred M. Wood, vested in the said Myrtle Wood, as a feme sole, only a reversionary interest in and to the mineral interests and estates hereinabove described, and that the said Myrtle Wood, as a feme sole, owned and held no rights, titles, or interests in praesenti thereto until such time as the claims of the creditors of the former community estate of Fred M. Wood and Myrtle Wood were fully satisfied and discharged, and that, therefore, the said Myrtle Wood is not the owner of any rights, titles, or interests in and to any of the moneys or funds impounded in the registry of this Court;

It is, THEREFORE, ORDERED, ADJUDGED, AND DECREED BY THE COURT that Myrtle Wood, a feme sole, had no rights, titles, or interests in the mineral interests and estates involved in this proceeding prior to the entry of this Order, and that she recover none of the moneys or funds impounded in the Registry of this Court.

HOWEVER, IT FURTHER APPEARING TO THE COURT, and the Court finding as a matter of fact and of law, that the satisfaction and discharge of the claims of those creditors of the former community estate of Fred M. Wood and Myrtle Wood hereinabove described, all as has been hereinabove provided, thereby renders the rights, titles, and interest of the said Myrtle Wood, a feme sole, in and to the mineral interests and estates hereinabove described as rights, titles, and interests in praesenti, and as and from the date of this judgment, the said Myrtle Wood is the owner of an undivided Four-Eighteenths (4/18ths) interest in and to the mineral interests and estates hereinabove described,

It is, THEREFORE, ORDERED, ADJUDGED, AND DECREED BY THE COURT that Myrtle Wood, a feme sole, do have and recover the title to and possession of an undivided Four-Eighteenths (4/18ths) interest in and to the mineral estates and interests hereinabove described as constituting the subject-matter of this suit, and that the said Myrtle Wood, a feme sole, do have and recover the title and possession of said undivided Four-Eighteenths (4/18ths) interest in and to said mineral estates free and clear of any and all assignments, liens (legal or equita-

ble), claims, demands, and encumbrances which are, or could be, asserted, claimed, owned, or held by any of the other parties to this suit, it being further ordered, adjudged and decreed by the Court that the title and possession of the said Myrtle Wood to said Four-Eighteenths (4/18ths) interest in said mineral estates be, and the same is hereby, quieted.

The amount paid into and impounded in the registry of the court on the Fred M. Wood, et al., interests in the Pierce Withers properties was $17,155.38. This amount was allocated to the various creditors of the community interest by the court.

Respondent computed the income from the properties in question in the following manner:

|  | 1951 | 1952 |
|---|---|---|
| Net Operating (or Oil) Income | $27,982.35 | $17,710.75 |
| Add: Production Tax | 1,399.12 | 885.53 |
| Gross Income | $29,381.47 | $18,596.28 |
| Less: Depletion 27½% | 8,079.90 | 5,113.98 |
| Production Tax | 1,339.12 | 885.53 |
| Ad Valorem Tax | —0— | 273.67 |
| Office Expense | —0— | 96.25 |
| Net Taxable Income | $19,902.45 | $12,226.85 |
| Distribution: |  |  |
| Pierce Withers Estate 45% | $8,956.10 | $5,502.08 |
| Fred M. Wood 45% | 8,956.10 | 5,502.08 |
| Robert W. McCullough 10% | 1,990.25 | 1,222.69 |
| Total | $19,902.45 | $12,226.85 |

One-half of the amount allocated to the Fred M. Wood share was $4,478.05 and $2,751.04 for the years 1951 and 1952, respectively. Respondent determined that the income from one-half of the 45 per cent interest in the Pierce Withers properties was attributable to petitioner, and the deficiencies involved are computed upon these amounts.

OPINION.

*Issue 1. Whether petitioner is taxable on one-half of the income from a 45 per cent interest in a joint oil venture during the years in question.*

It is petitioner's contention that she held a remainder interest in the Withers-Wood-McCullough properties and was not taxable on the income from that one-half of the 45 per cent interest until the remainder interest became a present interest on June 13, 1957, the date of the court decision in *Heard & Heard, Inc.* v. *Fred M. Wood, et al., supra.* Respondent argues that her interest was a present interest during the years in question, burdened by the indebtedness of the community estate, and that any income derived from that interest which is paid over to the Withers estate is a cancellation of indebtedness,

and, therefore, income to her to the extent that the indebtedness is canceled. We agree with the respondent.

Prior to the divorce decree and property settlement, the 45 per cent interest in the Withers-Wood-McCullough properties was community property. Petitioner held an undivided interest in that community property. The nature of that interest was a present interest burdened with the indebtedness to the Withers estate. The written agreement of June 1, 1946, recites that income from oil production was to go first to pay current expenses and the excess of the income, if any, was to be applied against the amount which Withers was entitled to recoup. If the right of recovery had extended solely to the oil production, the Withers estate would have held the economic interest in the 45 per cent interest of the community estate, and would receive ordinary income from that interest as long as the receipts were applied to its advances. *Thomas* v. *Perkins*, 301 U. S. 655 (1937). However, if the right of recovery does not depend solely on the oil production, then the interest is not an economic interest in the oil in place and the income derived from the 45 per cent interest would be taxable to the community interest. *Anderson* v. *Helvering*, 310 U. S. 404 (1940). The agreement of June 1, 1946, clearly indicates that the right of recovery extends to the proceeds from a sale of the fee interest in addition to the oil production and, therefore, is not limited solely to the oil production. Therefore, the interest falls within the rule of *Anderson* v. *Helvering*, *supra*, and the income is attributable to the community estate. In Texas, the wife has a present vested interest in community property and one-half of the income from the community property is income of the wife. *Hopkins* v. *Bacon*, 282 U. S. 122 (1930). One-half of the income from the 45 per cent interest of the community property during the existence of the marriage was chargeable to petitioner. *Hopkins* v. *Bacon*, *supra*.

At the date of the divorce decree and property settlement, March 24, 1951, the community estate indebtedness on the 45 per cent interest, which indebtedness was owed to the Withers estate, amounted to $15,510.25. The total indebtedness of the community estate was $25,-510.25. Fred M. Wood assumed personal liability for $10,000 of this indebtedness. Petitioner received a one-half interest in the 45 per cent interest owned by the community in connection with the Withers estate. Her interest in the 45 per cent interest was then her separate property. 23 Tex. Jur., sec. 81. Her separate property may not be subjected to payment of community debts. *Lusk* v. *Parmer*, 114 S. W. 2d 677 (Tex. Civ. App., 1938). However, if by the property settlement and divorce decree the wife receives property which had been burdened with an indebtedness incurred during the existence of the marriage, the creditors of the former community still have the right of payment from the property held by the wife, a feme sole after

the decree, and the property is still subject to payment of the indebtedness. *Grandjean* v. *Runke*, 39 S. W. 945 (Tex. Civ. App., 1897) ; and *First Nat. Bank of Brownwood* v. *Hickman*, 89 S. W. 2d 838 (Tex. Civ. App., 1935). Petitioner, therefore, took her one-half interest in the 45 per cent interest subject to the same indebtedness as that which existed prior to the divorce and property settlement. Her interest was a present interest subject to the right of the Withers estate to recover out of oil production or from a sale of her fee interest, one-half of the indebtedness which existed at the date of the divorce and property settlement. The income from the oil production of the one-half of the 45 per cent interest was taxable to her. *Anderson* v. *Helvering*, *supra*.

Petitioner argues that the District Court of Refugio County, Texas, settled the question of what the nature of her interest was, namely, a remainder interest after payment of the community indebtedness, and that we are bound by that decision. She cites *Estate of A. Bluestein*, 15 T. C. 770 (1950) to sustain her position, and *Frueler* v. *Helvering*, 291 U. S. 35 (1934). We agree that we are bound by the determination of the State court as to the rights of the parties in the State court proceedings. However, we do not understand the District Court for the County of Refugio, Texas, decided the question of title to the property. The court in that case decided that petitioner had no right, title, or interest in the funds in the court's possession which funds were derived from 45 per cent interest of the Withers-Wood-McCullough properties. The effect of the court's decision was to hold that petitioner did not have the possessory right to the funds because the creditors of Withers-Wood-McCullough had a prior right to the funds which were derived from that property. To the extent that the indebtedness on petitioner's interest is relieved, she has realized income. *Victor Rakowsky*, 17 T. C. 876 (1951).

Petitioner further argues that the property settlement gave her no more than an interest in the property, after payment of the community debts. She emphasizes that part of the divorce decree which states, "or a total to the Plaintiff of 22½% of said interest after the payment of community debts." Petitioner ignores that part of the decree and property settlement, dividing a share of the property to her husband, which states, "after the parties hereto have paid out of the 45% interest owned by the parties in connection with the Pierce Withers estate." This latter excerpt clearly indicates that petitioner was to have a present interest in the property, and that she was to pay, out of the income from that interest, her one-half of the community indebtedness.

*Issue 2. Whether petitioner is taxable on the one-third of her interest which she assigned to Sam I. Pittman.*

Respondent determined that petitioner was taxable on that one-third of the income from the one-half of the 45 per cent interest, assigned to

Sam I. Pittman, petitioner's attorney in the divorce proceedings, because the assignment was of the income which petitioner was to receive from the properties.

Petitioner held a one-half interest of a 45 per cent interest in properties. As such her interest was an interest in the fee, and the right to the income from that fee. She conveyed one-third of her entire interest in the properties to Pittman, without reservation of title. Pittman took good title to the fee of that interest. His right does not extend solely to the income from that interest, but extends also to the proceeds of any use or sale of the fee. This is an assignment of a capital asset. *Helvering* v. *Horst*, 311 U. S. 112 (1940).

Petitioner argues that respondent was acting arbitrarily in including in her income the income from the interest belonging to Pittman, and thus, that she is entitled to a decision of no deficiency. The determination in this case, however, was not an arbitrary determination within the meaning of *Helvering* v. *Taylor*, 293 U. S. 507 (1935). Even if it were, we could not hold that no deficiency exists, because in *Helvering* v. *Taylor*, *supra*, the court stated (293 U. S. 507, 515) :

On the facts shown by the taxpayer in this case, the Board should have held the apportionment arbitrary and the commissioner's determination invalid. Then, upon appropriate application that further hearing be had, it should have heard evidence to show whether a fair apportionment might be made and, if so, the correct amount of tax. * * *

There is no need for further hearing. The facts in this case show what the exact apportionment of the income should be if any is required.

Who the owner of the fee is in this case does not decide who is to be taxed on the income from the assigned interest, because income has been applied to the community indebtedness. In *Victor Rakowsky*, *supra*, this Court dealt with the question now before us. There the petitioner assigned his entire interest in certain patent royalties to his daughter, which interest had been burdened with an indebtedness to be paid out of the royalties. In that case, as in this, the assignee had not assumed personal obligation for the indebtedness. We held the assignor of the royalty interest taxable on the income from the royalties to the extent the prior indebtedness was relieved. We hold that petitioner is taxable on all of the income from the one-half of the 45 per cent interest in the Withers-Wood-McCullough properties in the years in question.

*Issue 3.   Whether respondent computed the allowance for depletion on gross income as required by sections 23 (m) and 114 (b) (3) of the Internal Revenue Code of 1939.*

Petitioner has raised the question of the correct computation of the depletion allowance. It is her position that respondent computed

the 27½ per cent allowance on the net income from the oil properties rather than on the gross income as provided in sections 23 (m) and 114 (b) (3) of the Internal Revenue Code of 1939. She contends that since respondent began with "Net Operating (or Oil) Income" and added to it the "Production Tax," and then computed 27½ per cent of that total, it was incorrect to label the total as "Gross Income." Petitioner urges that respondent computed the deduction on some other figure than gross income.

Respondent's explanation for this supposed error is that it is a well-established custom in the oil and gas business for the purchaser of oil and gas to deduct from the amount due the owners the applicable production and severance taxes levied by the State in which the property is located. The correct manner for computing the gross income is then to add back the taxes which have been deducted by the purchaser to the figure called net income by the purchaser, and this he has done. See Breeding and Burton, sec. 8.05 (1954). Petitioner has offered no evidence to indicate that the gross income is any different from the figure to which respondent applied the 27½ per cent, and in the light of the explanation tendered by respondent, we have no other alternative but to affirm his action with respect to this computation.

*Decision will be entered under Rule 50.*