**Carl A. PRATER and Della Jane C. Prater, Husband and Wife, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 17660.**

United States Court of Appeals Fifth Circuit.

Dec. 14, 1959.

Henry Schwartz, Tyler, Tex., Ramey, Brelsford, Hull & Flock, Tyler, Tex., of counsel, for petitioners.

Charles K. Rice, Asst. Atty. Gen., Arch M. Cantrall, Chief Counsel, Claude R. Marshall, Sp. Atty., I.R.S., Washington, D. C., Howard A. Heffron, Acting Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Marvin W. Weinstein, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before HUTCHESON, JONES and WISDOM, Circuit Judges.

HUTCHESON, Circuit Judge.

This petition, involving income taxes for the years 1950, 1951, and 1952, brings up for review a decision and opinion of the Tax Court, 30 T.C. 1262. While nominally presenting two questions, in reality it presents a single question for review. This is whether petitioner Prater and his wife, hereafter referred to as Prater, owners of a one-fourth carried working interest in certain oil and gas properties (under an agreement with the carrying parties that, while petitioners were not to be personally liable for expenses and losses of the initial development, their interest in the properties was to be charged therewith and all income attributable to that interest was to be charged with and devoted to their payment), may deduct the operating losses sustained during 1950 and 1951, and are taxable on the portion of income therefrom in 1952 attributable to said carried working interest.

The tax court made a full and detailed statement of the undisputed facts, to which, if desired, reference may be made. For our purpose, however, they may be thus briefly summarized:

Prater found and brought prospective oil properties to the attention of his friend Sibley who later interested a third venturer, one Smith, and arrangements were made by these venturers that Sibley and Smith were to provide for their initial financing and development with money borrowed on their per-

sonal credit and the security of the interests of the three venturers, with the understanding that, while Prater's interest was to be charged with and his portion of the income was to be applied to, the payment of the expenses and losses attending the development, Prater was not to be personally liable therefor and, when the development costs had been recouped, the income attributable to his interest in the properties was thereafter to be delivered to him. The development and operation of the properties resulted in net operating gains and losses as follows:

For the year 1950—Loss .. $61,892.21
For the year 1951—Loss .. 2,665.20
For the year 1952—Gain .. 15,439.58

The commissioner determined that, because Prater's portion of the income was pledged and applied to the payment of the recovery of the initial payment and the expenses of drilling and development, after which Prater would share fully in the costs and net profits of the enterprise, neither the income nor the losses in the years in question belonged to petitioners but were in reality the income and the losses of those who carried the interest. The Tax Court, agreeing with the commissioner in this view, sustained the deficiencies he had determined.

In the course of its opinion, the tax court specifically rejected Prater's claim: that the situation presented was similar in principle to that presented and determined in J. S. Abercrombie Co., 7 T.C. 120, affirmed, 5 Cir., 162 F.2d 338, and that that case is controlling here.

Appealing from the decision, Prater is here insisting that the Abercrombie case cannot be differentiated in principle, for, though the interest dealt with there was the carrying interest and the interest dealt with here is the carried interest, the position taken there by the Tax Court and by this court, and acquiesced in by the commissioner, is identical. This position is that, if one has an economic interest in oil in place, neither the fact, that that interest is pledged to secure the return of advances made on his ac-

count by others, nor the fact, that the owner is not personally liable for the repayment of the advances, changes the legal situation as to the ownership of the interest and the income and the right to deduct the expenses attributable to his share.

The commissioner, in his brief agreeing with the respondent that the distinction which the tax court sought to make between this and the Abercrombie case is not a valid one, and, pointing out that in the Abercrombie case the Tax Court, 7 T.C. 125, specifically stated: "that expenditures chargeable to the carried interest 'belonged' to the owners of the interest carried."; argues that the Tax Court's denial of the claim is nevertheless correct and should be sustained on another ground. This is that, while the expenses of the venture attributable to the carried interest are deductible by him, they are not deductible until the income attributable to the carried interest equals or exceeds the expenses attributable to that interest, and thus there can be no deductions for expenses incurred in respect of a carried interest until the time when there is a realization of income against which the expenses may be charged and with which they are paid.

The commissioner contends in short that this case involves claimed deductions for expenses which are, at most, contingent so far as the taxpayer is concerned, and whether he will ever have to pay these expenses by using his share of the income from the venture is highly problematical. Arguing that such expenses are chargeable to income only if there is income from which to make payment, and that the presence of this contingency should preclude allowance of the claimed deductions in the years in question, the commissioner then goes on to say:

*"The absence of a personal obligation on the part of the taxpayer to pay such expenses, though not significant in determining whether he has an 'economic interest' in the property (Com[missioner of Internal Revenue] v. Abercrombie, su-*

*pra)* *is important in determining whether he has 'paid or incurred' expenses for which deductions are claimed."* (Emphasis supplied.)

This reasoning is, we think, without sound basis in principle. Taken, as it is stated, it amounts to no more than this, that there is a difference between the right of a taxpayer to claim losses when those losses are charged upon and result in a diminution of the value of his interest and his right to claim them when they are paid out of his pocket. In addition, the reasoning and the ruling are directly contrary in principle to the decision in the Abercrombie case, supra, and to that announced and applied in Wood v. Commissioner, 31 T.C. 528, where it was held that income from property, which was charged with the payment of a debt, was the income of, and taxable to, the owner of the property, though she had no personal obligation for, or in respect to, the debt, on the theory that, though the income was paid directly to the creditor, the situation was the same as it would have been if the income had been paid to the taxpayer and by her paid in discharge of the debt which encumbered her title.

The judgment of the Tax Court is reversed and the cause is remanded with directions to disallow the deficiencies.

Reversed and remanded with directions.

WISDOM, Circuit Judge (dissenting).

I respectfully dissent. As I see it, the majority reads more into the Abercrombie case than there is in that case.

Abercrombie holds that prior to recoupment the carrier must exclude from his return the gross amount of income and expense attributable to the carried party's fractional interest. I realize that implicit in the Abercrombie holding, as distinguished from the holding by the Tax Court in the instant case, is recognition of the carried party's interest during the payout period as an economic interest. But during the payout Prater's interest, economic or what-have-you, is not such an interest that entitles him to share in present production and he is under no obligation to share in present expenses. He looks to production sometime in the future for recovery of costs. In a system of tax accounting based on the taxpayer taking deductions for expenses in the year when he pays the expenses (if he is on a cash basis, as Prater is) or on taking deductions in the year when expenses become due (if he is on an accrual basis)—it is somewhat less than realistic to allow the taxpayer to deduct development costs before he has paid such expenses, before he owes such expenses (because the production income in the years in question did not exceed expenses), and when he might never pay such expenses (should there be no production or should production not exceed expenses).

The critical issue before us is, *when* may a carried party deduct his share of the expenses? That question was not reached in Abercrombie. And, an answer based on Abercrombie has no necessary relation to the critical issue. To my mind, Prater had no taxable income from production in the years in question, and therefore no deductible development costs for those years. If, as, and when the contingency should occur, that is the payout that would enable Prater to realize production against which he could offset expenses, then and then only ·should he be able to deduct expenses.

Again with deference, it seems to me that it is a pure figure of speech to say that Prater pledged his interest to secure the return of advances; or, that the losses were a charge against Prater's interest just as much as if he had paid them out of pocket. Putting aside fictions, the plain fact is that there is no loan or pledge or charge equivalent to payment in cash—when the taxpayer has no firm obligation to repay the carrier's advances (should there be insufficient production) and the carried interest has no value (if there should be no production).

I would hold that a carried party having no present right to share in current income, has no present right to share in current expenses; and, under these circumstances, that the carrying party has the right to deduct all the expenses.