Myrtle J. WOOD, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 17892.

United States Court of Appeals Fifth Circuit.

Jan. 15, 1960.

Rehearing Denied Feb. 23, 1960.

Hutcheson, Circuit Judge, dissented.

Robert J. Hobby, Wentworth T. Durant, Dallas, Tex., for petitioner.

Carolyn R. Just, Joseph Kovner, Marvin W. Weinstein, Lee A. Jackson, Attys., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Arch M. Cantrall, Chief Counsel, Internal Revenue Service, Claude R. Marshall, Sp. Atty., I. R. S., Washington, D. C., for respondent.

Before RIVES, Chief Judge, and HUTCHESON and TUTTLE, Circuit Judges.

TUTTLE, Circuit Judge.

This is a petition to review the decision of the Tax Court reported in 31 T.C. 528.

■ Petitioner is the divorced wife of Fred M. Wood. Before the divorce the community owned a 45% interest in certain oil and gas production. At the time of divorce the community was indebted to others in the amount of $25,-510.25. The divorce decree awarded Mrs. Wood:

"(3) A one-half interest in that 45% interest owned by the community in connection with the Pierce Withers estate at Houston, Texas, or a total to the Plaintiff of 22½% of said interest *after the payment of community debts* with a provision that Fred M. Wood will assume Ten Thousand ($10,000.00) Dollars of the existing community debt of the approximate total of Twenty-five Thousand Five Hundred Ten ($25,-510.25) and 25/100 Dollars;" (Emphasis added).

Mrs. Wood assigned one-third of her 22½% interest to her attorney, Sam Pittman, for services rendered her in her divorce proceedings.

The income from the interest was impounded by a state court order during the tax years in question (1951 and 1952) and for subsequent years at the instance of creditors of the community who sought to reach it to satisfy the community debts. Mrs. Wood received none of the payments until after a decree entered by the Texas state court in the creditors' suit in 1957.

Mrs. Wood reported no income from this source for the tax years, although the share actually produced $4478.05 in 1951, and $2751.04 in 1952. These funds were ultimately paid out to creditors of the community as decreed by the Texas court.

The Commissioner contends that the divorce decree awarded petitioner a present interest in the mineral interest subject only to payment of the community debts; that payments to the community creditors were for Mrs. Wood's benefit and the sums were therefore taxable to her.

Taxpayer contends that the later Texas court decree expressly held that the divorce decree conveyed no title to Mrs. Wood *in praesenti,* but conveyed her only a remainder interest in the minerals *after* the community debts were paid; that since, after the divorce, the community debts were not chargeable to her (even though collectible out of her "share" of the community property) discharge of the debts was not for her benefit and thus did not thereby become income to her.

 We agree with the taxpayer. Several of the legal propositions asserted by the parties are not in conflict. The first is: Community income is taxable one-half to each member of the community; the second is: After divorce the wife is not personally liable for the payment of community debts; the third is that: As stated by the Tax Court in this case, "we agree that we are bound by the determination of the state court as to the rights of the parties in the state court proceedings," 31 T.C. 528. See, as to this point, Freuler v. Helvering, Commissioner, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634; Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465.

 There is no doubt that as long as the community continued each spouse was taxable on one-half the income. This was so even though the entire income might be consumed in discharging community debts. The divorce decree, however, terminated the community. The property set aside for the wife in the divorce decree became the separate property of the wife. It is contended by petitioner that the property set aside for her was a reversionary interest in the one-half interest in the 45% production and that no payments made to discharge the community debts before the reversion vested in her could be charged to her as income.

The government says the Tax Court correctly stated:

"We do not understand the district court for the County of Nueces, Texas, decided the question of title to the property."

The government, in its brief says:

"But, on analysis, it is immediately seen that the * * * court did no more than decide that taxpayer had no rights *to the funds* in the court's custody, as her separate property, against the creditors of the community." (Emphasis added.)

 The basic fallacy with the conclusion of the Tax Court and the Commissioner is that they appear not to have critically read the state court's decree. It unquestionably, and in precise terms, found as to title to the property, i. e., the oil and mineral interests. No one can now contend that this is not title to property. Ferguson v. Commissioner, 5 Cir., 45 F.2d 573. The state court was called upon to construe the decree of divorce.[1] It held:

"It Further Appears to the Court from the evidence adduced at the trial of this cause, and the Court finds as a matter of fact and of law, that *the divorce decree* hereinabove described which was rendered in the case of Myrtle Wood, *vested* in the

---

1. The government does not challenge the power of the state court to construe, so as to bind all parties before it, the divorce decree. This being so, what it said the divorce decree meant must be taken by us to be just as if it had been expressly stated in the divorce decree itself.

said Myrtle Wood, as a femme sole, *only a reversionary interest in and to the mineral interests and estates* hereinabove described, and that the said Myrtle Wood, as a femme sole, owned and held no rights, *titles,* or interests *in praesenti thereto* until such time as the claims of the creditors of the former community estate of Fred M. Wood and Myrtle Wood were fully satisfied and discharged, and that, therefore, the said Myrtle Wood is not the owner of any rights, titles, or interests in and to any of the moneys or funds impounded in the registry of this Court:

"It Is, Therefore, Ordered, Adjudged, and Decreed by the Court that *Myrtle Wood,* a femme sole, *had no rights, titles, or interests in the mineral interests and estates* involved in this proceeding prior to the entry of this Order, and that she recover none of the moneys or funds impounded in the Registry of this Court.

"However, It Further Appearing to the Court, and the Court finding as a matter of fact and of law, that the satisfaction and discharge of the claims of those creditors of the former community estate of Fred M. Wood and Myrtle Wood hereinabove described, all as has been hereinabove provided, thereby renders the rights, titles, and interest of the said Myrtle Wood, a femme sole, in and to the mineral interests and estates hereinabove described as rights, titles, and interests in praesenti, and *as and from the date of this judgment,* the said *Myrtle Wood is the owner of an undivided Four-Eighteenths (4/18ths) interest in and to the mineral interests and estates* hereinabove described.

"It Is, Therefore, Ordered, Adjudged and Decreed by the Court that Myrtle Wood, a femme sole, do have and recover the title to and possession of an undivided Four-Eighteenths (4/18ths) interest in and to the mineral estates and in-

terests hereinabove described as constituting the subject matter of this suit, and that the said Myrtle Wood, a femme sole, do have and recover the title and possession of said undivided Four-Eighteenths (4/18ths) interest in and to said mineral estates free and clear of any and all assignments, liens (legal or equitable), claims, demands, and encumbrances which are, or could be, asserted, claimed, owned, or held by any of the other parties to this suit, it being further ordered, adjudged and decreed by the Court that *the title and possession of the said Myrtle Wood to said Four-Eighteenths (4/18ths) interest in said mineral estates be, and the same is hereby, quieted."* (Emphasis added.)

The Commissioner does not here challenge the right of the court to pass specifically on the question of title in the state of the pleadings before it. Taxpayer, on the other hand makes a convincing argument to the effect that such issue was necessarily passed on. In such circumstances, we must take the state court decree at its face value. So doing, we conclude that Mrs. Wood had no title to the estate until all community debts were paid; that the debts were not her personal debts; and were not paid for her benefit; thus she had no income from the property during the tax years.

The fact that the income was Mrs. Wood's before divorce and later became hers after all debts were paid is in no way inconsistent with the holding of the state court that she had no title or interest during the time that the community debts (no longer chargeable to her individually) were being paid off.

In light of our conclusion on the principal issue we need not consider the Commissioner's claim that Mrs. Wood was equally taxable on the income from the one-third interest assigned to Pittman. We would agree that this would be taxable to her if the other amounts used to pay off the indebtedness were so taxable, because the sums that Pittman's one-

third share represented were actually used to help discharge this indebtedness and he received no income from his interest until after the debts had been fully discharged.

The order of the Tax Court is Reversed and the case Remanded for further proceedings not inconsistent with this opinion.

HUTCHESON, Circuit Judge (dissenting).

I am of the clear opinion that this appeal basically presents a typical Abercrombie situation,[1] under which, except as to the income from the interest assigned to Pittman, her counsel in the divorce proceedings, the Tax Court was correct in holding that the taxpayer was the owner of, and taxable on the income in question in this case.

I cannot, therefore, agree with, but must dissent from the majority opinion to the contrary.

The chronological summary, set out in the margin,[2] of the critical facts as the record presents them, will serve, I think, at once to point my view up and to demonstrate its correctness.

At the hearing before the Tax Court, counsel for petitioner, as her first ground of assault upon the deficiencies, attacked the Abercrombie case, supra, as unsound and insisted: that the Pierce Withers agreement had vested the titles to the properties and, therefore, the income from them in Withers; and that, because it had done so, petitioner had not in the tax years in question either personally received or been otherwise chargeable with receipt of any of the income charged to her.

1. J. S. Abercrombie Co., 7 T.C. 120, affirmed, 5 Cir., 162 F.2d 338. Cf. Prater v. Commissioner, 5 Cir., 273 F.2d 124.

2. (1) Petitioner and Fred Wood, citizens of and residing in Texas, were married in 1925, and divorced on March 24, 1951. They acquired as community property certain oil properties which at some time prior to 1946 were placed by oral agreement in a joint venture with Pierce Withers and Robert McCullough.

(2) On June 1, 1946, Wood and McCullough and Carter, as guardian of Withers' estate, entered into an "Abercrombie" type agreement, set out in full in the Tax Court's opinion.

(3) On March 24, 1951, the Woods were divorced and incorporated in the decree was the property settlement as set out in the Tax Court's opinion.

(4) On Nov. 4, 1954, notice of deficiencies in taxes for the years 1951 and 1952, because of the failure of petitioner to report the income from these properties and based on an examination made in 1953, was mailed to Mr. Durant, petitioner's counsel and attorney in fact in the tax case.

(5) On Jan. 24, 1955, petitioner, through her present tax attorneys, filed her petition in the Tax Court for a redetermination of deficiencies, and on Feb. 28, 1955, respondent answered and requested a hearing on the Dallas calendar.

(6) Nothing further appears, however, in the record of this suit until an order

was entered setting the hearing of the case for April 1, 1957, when the following proceedings ensued.

(7) Prior to March 1, 1957, petitioner, through her present counsel, filed a motion to place the case on the reserved calendar or continue it, stating as grounds that on Nov. 17, 1955, Heard and Heard had filed against Fred and Myrtle Wood and others in the State Court of Refugio County the suit discussed at length in the Tax Court opinion, in which Mrs. Wood was first represented by her present tax counsel and later by another. In the petition counsel advised the Tax Court that the trial of the state case would be held on April 29, 1957, as to the expected result in it, and the effect this result would have on the tax case.

(8) The Tax Court granted this motion for continuance, and the trial was set for October 27, 1957.

(9) On Sept. 18, 1957, petitioner was granted leave to file an amendment to her petition in the Tax Court, and in it she pleaded, among other things, that, in the Refugio County State Court suit, the court had, by its decision, determined the tax question in Mrs. Wood's favor, in that it had held that, though Mrs. Wood was not, in the tax years in question, the owner of the interest which had produced the income and, therefore, did not own any of the funds impounded in the court, she did, on June 13, 1957, after and because of the entry of the state court judgment, become the owner thereof.

As her second and main ground of assault upon the commissioner's determination, she put forward the Refugio County State Court suit and judgment, as to which, in her petition for continuance in the Tax Court, she had stated to the court that she expected it to settle the tax issue in her favor. Thus putting it forward and standing on it, she asserted that the Tax Court was conclusively bound by it.

As her third issue, she urged that certainly the income attributable to the one-third interest assigned to Pittman, her counsel in the divorce suit, should not be held to have been her income.

The commissioner, relying on Anderson v. Helvering, 310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277, and the Abercrombie case, note 1, supra, and on a vigorous insistence that the judgment in the Refugio County district court was not and could not be binding on the Tax Court, indeed was not relevant thereto, urged that judgment must go for him. As to the assignment to Pittman, his position was that he had not been theretofore advised of it.

In view of the fact that the Tax Court's opinion and the contentions with respect to it have been fully discussed in the majority opinion, it will not be necessary for me to set them out or discuss them here. It is sufficient to say that, while I agree with the petitioner that income attributable to the interest she had assigned to Pittman cannot be attributed to her, I find myself otherwise in complete agreement with the contentions of the commissioner: that, under the undisputed facts the Abercrombie principle and case are controlling here; that the decision in the Refugio District Court, in effect that Mrs. Wood did not own any interest in the properties until it was conferred upon her on June 13, 1957, after and because of the state court judgment, is without sound basis in law and in fact; and that it is not in any manner binding upon the commissioner or the United States. Cf. Saulsbury v. United States, 5 Cir., 199 F.2d 578, where a good discussion of the whole matter appears, and Merchants National Bank & Trust Co. of Indianapolis v. United States, 246 F.2d 410, at page 417, where the Court of Appeals for the Seventh Circuit, citing in note 12 a number of "seemingly conflicting federal courts of appeals cases", including three from this circuit, held that the proceeding in the case before it was not in law a true adversary proceeding and that the judgment in the state trial court was not binding upon the United States.

It seems to me that under the teachings of the Saulsbury case and the cases it cites, the record as a whole, which is lodged in and available to this court, makes it perfectly clear that, putting the state court judgment forward here, as binding on the federal court, represents an inadmissible effort to bind the United States, with respect to the incidence of federal taxation, in a suit to which it was not a party and in which the judgment was not only directly contrary to the decree in the divorce case, which it purported to construe and give effect to, but contained pronouncements having no bearing on the real issue in the case, the rights of the parties litigant to the funds in court, and was, therefore, not in a real sense an adversary proceeding.

Moreover, if the suit and the proceedings in it are deemed to be in a legal sense adversary and the matters there adjudged are res judicata as between, and binding on, the parties, they are certainly not so as to the commissioner or the United States, neither of whom was a party to the suit. Neither, since the judgment is merely the pronouncement of an inferior state trial court, can it be regarded as stare decisis and binding as law upon this court. Cf. Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465. It is my opinion, therefore, that the Tax Court judgment against petitioner should be modified by disallowing the deficiencies as to the income chargeable to the Pittman interest and, as modified, affirmed, and the cause should be remanded to the Tax Court for a redetermination of the deficiencies in

274

accordance herewith, and I, therefore, dissent from the decision and judgment of the majority.

Rehearing denied: HUTCHESON, Circuit Judge, dissenting.